**COMMONWEALTH of Pennsylvania, Appellee**

v.

**David HUGGINS, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 2012.

Filed May 7, 2013.

Reargument Denied July 11, 2013.

Vincent J. Quinn, Lancaster, for appellant.

William R. Stoycos, Office of the Attorney General, Harrisburg, for Commonwealth, appellee.

BEFORE: OLSON, OTT and FITZGERALD,* JJ.

OPINION BY OLSON, J.:

Appellant, David Huggins, Jr., appeals from the judgment of sentence entered on August 4, 2011 following his jury trial convictions for corrupt organizations, criminal conspiracy, criminal use of a communication facility, and four counts of delivery or possession with intent to deliver a controlled substance.[1] Upon careful consideration, we affirm.

The trial court aptly set forth the facts and procedural history of this case as follows:

The criminal charges filed against Appellant [ ] and his seven co-defendants in this consolidated case—Henry L. Williams, Justin E. Wiley, Leroy K. Warrick, David L. Lambert, Amin L. Owens, Salim D. Brokenborough, and Felicia Cooper—were instituted by the filing of criminal complaints based on Presentment No. 19, which was returned by the Twenty–Ninth Statewide Investigating Grand Jury. By Order dated October 8, 2009, the Honorable Barry Feudale, Acting Supervising Judge of the Twenty–Ninth Statewide Investigating Grand Jury, accepted the Grand Jury's Presentment and directed that venue for prosecution of the defendants' crimes be held in Lancaster County, Pennsylvania.

---

* Former Justice assigned to the Superior Court.

1. 18 Pa.C.S.A. §§ 911, 903, 7512, and 35 P.S. 780–113(a)(30), respectively.

The Grand Jury provided the following summary of the investigation that resulted in the filing of the criminal charges against these co-conspirators:

During the summer of 2008, members of the Pennsylvania Office of Attorney General Bureau of Narcotics Investigation and Drug Control (BNIDC), Region II, Philadelphia Office, investigated the distribution of marijuana and cocaine in and around Philadelphia, Montgomery, Delaware and Lancaster counties in Pennsylvania. The investigation began with controlled purchases of marijuana from an individual supplied by David Lambert.

As the investigation developed, the agents concentrated on the controlled substance trafficking of David Lambert, a.k.a. Lamont Brooks, a.k.a. D–Rock. The evidence developed to show that Lambert had an organization that mainly dealt with trafficking cocaine and marijuana to customers in several counties from Philadelphia to Lancaster.

In November of 2008, this Grand Jury began to hear testimony from BNIDC about this illegal drug trafficking organization. Agents William Ralston and David Carolina, along with two lay witnesses involved in the organization's business testified about the operations of the illegal distribution of David Lambert.

In September 2008, pursuant to the applications made by Thomas W. Corbett, Jr., Attorney General for the Commonwealth of Pennsylvania, [this] Court [ ] issued orders authorizing the interception of wire and electronic communications on two telephones used by David Lambert to conduct this illegal business. Non-consensual interceptions began on September 11, 2008.

Based upon interceptions and surveillance of David Lambert, agents corroborated that Lambert was selling marijuana and cocaine that he received from various sources. Some of the identified sources of cocaine were Henry Williams, [Appellant], Amin Owens, and Salim Brokenborough. Brokenborough also supplied marijuana to Lambert. Justin Wiley, a resident of Lancaster, PA worked with Lambert in obtaining and distributing cocaine throughout the region. Felicia Cooper and Leroy Warrick were employed by Lambert to assist him in carrying out his drug business. The investigation showed that, from September through October 2008, these individuals enabled Lambert to supply various other individuals with quantities of cocaine ranging from multi-ounce to multi-grams and pound quantities of marijuana.

Evidence from the non-consensual interceptions and the accompanying surveillance provided probable cause for BNIDC agents to execute multiple search warrants in Lancaster and Philadelphia counties.

As a result of this Grand Jury Presentment, criminal complaints were filed against all of the co-defendants on October 22, 2009. The charges common to all defendants include corrupt organizations, criminal conspiracy, criminal use of [a] communication facility, and violations [of] the Controlled Substance, Drug, Device and Cosmetic Act. Co-defendant Lambert was additionally charged with person not to possess or sell firearms. Pursuant to Pa.R.Crim.P. 582, the criminal cases were consolidated for trial.

A pre-trial conference was held on August 18, 2010, which resulted in a scheduling order requiring all pre-trial motion[s] to be filed on or before October 29, 2010. Appellant Huggins filed timely motions to suppress evidence obtained by electronic surveillance and evidence seized from his person and his home following his arrest on November 9, 2009. [Appellant] Huggins also filed an untimely motion for a change of venue pursuant to Pa.R.Crim.P. 584 on January 31, 2011. In an Opinion and Order dated February 3, 2011, [the trial court] denied Huggins' motion for change of venue. Following the pre-trial hearing February 25, 2011, [the trial court] denied Huggins' motion to suppress physical evidence and motion to suppress evidence obtained by electronic surveillance by Order dated March 28, 2011.

The case proceeded to a jury trial on April 4, 2011, against [five] of the original eight co-conspirators. Leroy Warrick and Justin Wiley entered guilty pleas just prior to trial. Felicia Cooper, in hopes of negotiating a favorable guilty plea with the Commonwealth, testified at trial against her co-conspirators. In addition to her testimony, the Commonwealth presented evidence from a search of Wiley's house. The search, conducted pursuant to a search warrant, turned up crack and powder cocaine, cash, ammunition, and drug-distribution paraphernalia. The Commonwealth also introduced recordings of drug-related conversations from lawful wiretaps on two cell phones belonging to Lambert. Some of the conversations included Lambert talking with [Appellant]. Other members of the conspiracy were caught on tape discussing narcotics transactions involving [Appellant].

On April 19, 2011, a verdict was entered against Appellant Huggins and his co-defendants. [Appellant] was found guilty of corrupt organizations, criminal conspiracy, four counts of delivery or possession with intent to deliver a controlled substance, and criminal use of [a] communication facility. On August 4, 2011, [Appellant] received an aggregate sentence of 9½ to 19 years['] incarceration.

A timely notice of appeal to [this] Court [ ] was filed on September 6, 2011. Pursuant to the [trial c]ourt's directive, [Appellant] furnished a statement of errors complained of on appeal which raised just one issue: whether the [trial c]ourt erred in overruling Appellant's objection and in permitting the Commonwealth to introduce testimony from Agent David Carolina, which consisted of his personal summarization of and commentary upon various telephone conversations which were intercepted by agents of the Commonwealth.

Trial Court Opinion, 10/6/2011, at 1–4 (citation and footnotes omitted).

On appeal, Appellant presents the following issue for our review:

Whether the lower court erred in overruling [Appellant's] objection and in permitting Agent David Carolina to summarize and characterize approximately [151] phone conversations which were intercepted by Commonwealth agents when this testimony constituted his personal opinion beyond the scope of his expertise, which opinion was irrelevant, highly prejudicial, and effectively usurped the fact-finding function of the jury?

Appellant's Brief at 5 (complete capitalization omitted).

Appellant contends that the testimony of Agent David Carolina "went far beyond his expertise" as a drug agent. *Id.* at 9. Specifically, Appellant argues that Agent Carolina improperly "described various actions

and gave his opinion concerning whether various [intercepted telephone] conversations were drug-related." *Id.* Appellant concedes, however, that "[s]ome of [Agent Carolina's] testimony was properly admitted since it consisted of his expert opinion concerning the meaning of various terms used in the drug culture." *Id.* at 10. Nonetheless, Appellant argues that Agent Carolina's testimony regarding various intercepted drug-related discussions "summarized the conversations and essentially told the jury what was happening" which usurped their fact-finding function. *Id.* at 10–11.

The ultimate issue in this case is one of first impression for this Court. Herein, we are asked to determine whether the same witness may be proffered to testify regarding both lay and expert opinions without usurping the jury's fact-finding function.

 A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion. *Commonwealth v. Cook,* 544 Pa. 361, 676 A.2d 639, 647 (1996). Accordingly, a ruling admitting evidence "will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Minich,* 4 A.3d 1063, 1068 (Pa.Super.2010) (citations omitted). Moreover, in cases involving the admission of expert testimony:

Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

*Commonwealth v. Watson,* 945 A.2d 174, 176 (Pa.Super.2008) (internal citations and quotations omitted). Where the evidentiary question involves a discretionary ruling, our scope of review is plenary, in that the appellate court may review the entire record in making its decision. *Commonwealth v. Delbridge,* 580 Pa. 68, 859 A.2d 1254, 1257 (2004).

In this case, the trial court relied upon several Pennsylvania Rules of Evidence in permitting Agent Carolina to offer opinion testimony as both a lay witness and as an expert.[2] As a result, the issue before this Court involves the proper interpretation of rules adopted by our Supreme Court governing the admission of evidence at trial, and, thus, the question is a legal one, which means our standard of review is *de novo,* and our scope of review is plenary. *Commonwealth v. Brown,* 52 A.3d 1139, 1176 (Pa.2012). In interpreting the meaning of Pennsylvania Rules of Evidence, we ascribe to the words of those rules their plain and ordinary meaning. *Id.*

There are three Rules of Evidence that are in play in this case. First, Rule of Evidence 701 provides as follows:

**2.** We note that on January 17, 2013, the Pennsylvania Supreme Court rescinded and replaced the Pennsylvania Rules of Evidence, effective March 18, 2013. *See* Pa.R.E. 101, Comment. Throughout Article VII of the Rules of Evidence, the term "inference" has been eliminated when used in conjunction with "opinion." The term "inference" is subsumed by the broader term "opinion" and Pennsylvania case law has not made a sub-

stantive distinction between an opinion and an inference. No change in the current practice was intended with the elimination of this term. *See* 2013 PENNSYLVANIA COURT ORDER 0005 (C.O.0005). Because the trial court relied upon the Rules of Evidence as they stood before the rescission and replacement and no change to current practice is intended by the Supreme Court's order, we rely upon the prior language of the Rules.

### Rule 701. Opinion Testimony by Lay Witnesses

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Next, Rule of Evidence 702 states:

### Rule 702. Testimony by Experts

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702.

Moreover, Rule of Evidence 704 further permits:

### Rule 704. Opinion on Ultimate Issue

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Pa.R.E. 704.

■ Based upon a plain meaning interpretation of the various rules at play, when read *pari materia*, we conclude that the rules do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and an expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder. Rule 702 permits an expert to testify to scientific, technical or other specialized knowledge beyond that possessed by a layperson. Rule 701 permits a layperson to testify in the form of an opinion, however, such testimony must be rationally based on that witness' perceptions. Thus, an expert must have additional specialized knowledge in rendering an opinion; whereas, a lay witness must form an opinion based upon his or her rationally based perceptions. The Rules, however, do not specifically delineate that a witness must be only one or the other. Instead, the witness' association to the evidence controls the scope of admissible evidence that he or she may offer. Furthermore, Pennsylvania Rule of Evidence 704 clearly permits both expert and lay opinion testimony on issues that ultimately must be decided by the trier of fact, in this case, the jury.

This Court has previously determined that in narcotics investigations involving legally intercepted telephone conversations, expert testimony regarding coded and cryptic language relating to criminal activity and sales of controlled substances is permissible under Rule 701. *See Commonwealth v. Cuevas*, 2013 PA Super 21, *1, 61 A.3d 292; *see also Commonwealth v. Doyen*, 848 A.2d 1007 (Pa.Super.2004) (trial court did not abuse its discretion in drug prosecution by qualifying trooper as an expert concerning coded and guarded language used by drug dealers); *Commonwealth v. Vitale*, 445 Pa.Super. 43, 664 A.2d 999, 1001 (1995) ("Expert testimony is readily admissible to interpret and explain the use of code words and the meaning of certain language used in drug trafficking."). In this case, when the Commonwealth admitted an intercepted conversation into evidence, the prosecutor asked Agent Carolina to discern whether he believed the dialogue was drug-related, based upon his expertise, training, and experience. Agent Carolina would opine that he believed the call related to narcot-

ics distribution and would then decrypt what he understood was encoded language. In its opinion, the trial court highlighted some examples: "Agent Carolina testified that 'work' means cocaine, 'tree' means marijuana, and 'squirrel' refers to a quarter ounce of cocaine." Trial Court Opinion, 10/6/2011, at 7 (record citation omitted).[3]

Likewise, Agent Carolina reviewed the legally intercepted telephone conversations and, in addition to deciphering the drug jargon used by the parties to the conversations, testified regarding the investigation in general based upon his personal perceptions, including the identity of the speakers. This Court has previously permitted lay opinion testimony regarding voice recognition after laying the proper foundation and authentication of the recording.[4] *See Commonwealth v. Carpenter*, 472 Pa. 510, 372 A.2d 806 (1977) (telephone identification by an acquaintance who then passed the receiver to law enforcement was admissible lay witness evidence).

Based upon our review of the relevant Pennsylvania Rules of Evidence, and in light of our standard of review, we do not believe that the trial court abused its discretion in permitting Agent Carolina to provide opinions as both an expert and a layperson.

■ In addition to relying upon the Pennsylvania Rules of Evidence, the trial court relied upon federal case law as further support for the proposition that a single witness may testify in dual capacities. Initially, we note "this Court is not bound by decisions of federal courts inferior to the United States Supreme Court, even though we may look to them for guidance."[5] *Commonwealth v. Ragan*, 560 Pa. 106, 743 A.2d 390, 396 (1999).

---

**3.** Appellant relies upon this Court's decision in *Commonwealth v. Montavo*, 439 Pa.Super. 216, 653 A.2d 700 (1995) for his contention that Agent Carolina's testimony exceeded the scope of expert opinion. Appellant's Brief at 11–12. After careful review, however, *Montavo* is readily distinguishable from the facts currently before us. In *Montavo*, the trial court qualified the testifying state trooper as an expert. The trooper offered his opinion that the defendant was selling drugs based solely on the defendant's presence in a high crime area. On appeal, this Court held that the admission of expert testimony under such circumstance was improper because it invited the jury to abdicate its responsibility as factfinder and defer to the expert's opinion. *Montavo*, 653 A.2d at 705. However, the concerns present in *Montavo* are not present in this case. As explained at length *infra*, here, at each turn, there was a concrete underlying factual foundation as to each facet of Agent Carolina's testimony, whether Agent Carolina offered testimony in the form of opinion as to the nature of drug lingo or whether he identified voices or described conversations. As to Agent Carolina's expert testimony, it was offered to explain drug terms based upon his knowledge, training, and experience. Regarding Agent Carolina's lay opinion testimony, it was rationally based upon his perceptions of the recorded telephone conversations that were also offered into evidence. The Commonwealth asked Agent Carolina to describe who was speaking, where they were located, and what they were talking about or planning. Often surveillance was conducted after conversations were intercepted and the surveillance confirmed that the perceptions were accurate. Thus, *Montavo* does not preclude the admission of Agent Carolina's testimony.

**4.** Foundation and authentication are not at issue herein.

**5.** We note that Pennsylvania Rules of Evidence 701 and 704 are substantively identical to their federal counterparts. *See* Pa.R.E. 701 and 704, Comments. *See also Commonwealth v. Davies*, 811 A.2d 600, 602 n. 1 (Pa.Super.2002) ("this Commonwealth has adopted Federal Rule of Evidence 701, which allows testimony by a lay witness in the form of an opinion, where the opinion is (1) rationally based on the perception of the witness and (2) helpful to the determination of a fact in issue"). Moreover, Pennsylvania Rule of Evidence 702 recognizes that, in this Common-

In *United States v. Christian*, 673 F.3d 702 (7th Cir.2012), the Seventh Circuit United States Court of Appeals was called upon to determine whether it was error to allow an FBI agent to testify as an expert and lay witness. In that case, the FBI agent witnessed the defendant standing next to a parked car near a field. The agent believed that the defendant was either sick or urinating. When the agent approached, the defendant "immediately turned away, made a furtive movement with his arms, jumped into his vehicle, and took off, triggering a high-speed car chase." *Christian*, 673 F.3d at 705. After the chase, the FBI agent went back to the field where the initial encounter took place and retrieved a loaded firearm. The Seventh Circuit agreed with the district court that the agent could testify as a lay witness regarding his personal observations and as an expert relating to concealed firearms, furtive movements, and abandoned weapons. More specifically, it stated:

> A witness can qualify as both a fact and expert witness and an expert may base an opinion on fact or data in the case that the expert has personally observed. Fed.R.Evid. 703. Thus, the Rules do "not distinguish between expert and lay *witnesses*, but rather between expert and lay testimony." Fed.R.Evid. 701 advisory committee's note (2000 amends.). "[L]ay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Id.* (quotations omitted). We have explained

that "[a] law-enforcement officer's testimony is a lay opinion if it is 'limited to what he observed ... or to other facts derived exclusively from [a] particular investigation.'" [*United States v.*] *Gaytan*, 649 F.3d [573,] 581 [ (7th Cir. 2011) ] (quoting *United States v. Oriedo*, 498 F.3d 593, 603 (7th Cir.2007)). "On the other hand, an officer testifies as an expert when he brings 'the wealth of his experience as [an] officer to bear on those observations and ma[kes] connections for the jury based on that specialized knowledge.'" *Id.*; *see also United States v. Fenzl*, 670 F.3d 778, 782 (7th Cir.2012).

However, the distinction between expert and lay testimony is often far from clear in cases where, as here, "a witness with specialized ... knowledge was also personally involved in the factual underpinnings of the case." *United States v. White*, 492 F.3d 380, 401 (6th Cir.2007). The inferences officers draw when observing and responding to situations cannot always be separated from the expertise they bring to evaluate those situations. Their observations are guided by experience and training and thus, at least some of their fact testimony will be influenced by this specialized knowledge.

*United States v. Christian*, 673 F.3d 702, 708–709 (7th Cir.2012).

The *Christian* decision acknowledged that when allowing dual testimony, the gatekeeping function of the court is imperative. In rendering its decision, the Seventh Circuit examined two of its prior cases, *United States v. York*, 572 F.3d 415

---

wealth, expert testimony requires scientific evidence to have general acceptance in the scientific community under *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923) even though the United States Supreme Court held that *Frye* was superseded in the federal courts

by the adoption of F.R.E. 702 and its decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, in this case, scientific evidence was not at issue. Hence, an examination of federal law is instructive.

(7th Cir.2009) and *United States v. Farmer*, 543 F.3d 363 (7th Cir.2008). Apropos to the instant situation, *York* and *Farmer* each dealt with law enforcement officers testifying as both expert witnesses in interpreting drug jargon and fact witnesses relaying the progress and events of the respective investigations. The *Christian* Court opined:

> We have stated on numerous occasions that when a witness, such as [FBI] Agent Manns, testifies in a dual capacity, the district court must take precautions to minimize prejudice to the defendant. *See York*, 572 F.3d at 425; *see also United States v. Farmer*, 543 F.3d 363, 370 (7th Cir.2008). The witness's dual role might confuse the jury, *United States v. Goodwin*, 496 F.3d 636, 641 (7th Cir.2007), or a jury might "be smitten by an expert's 'aura of special reliability' and therefore give his factual testimony undue weight," *York*, 572 F.3d at 425; *see also United States v. Upton*, 512 F.3d 394, 401 (7th Cir.2008) ("Experts famously possess an 'aura of special reliability' surrounding their testimony. And it is possible that the glow from this halo may extend to an expert witness's fact testimony as well, swaying the jury by virtue of his perceived expertise rather than the logical force of his testimony." (internal citation omitted)). "Or, the jury may unduly credit the opinion testimony of an investigating officer based on a perception that the expert was privy to facts about the defendant not presented at trial." *York*, 572 F.3d at 425 (quotations omitted). Alternatively, "the mixture of fact and expert testimony could, under some circumstances, come close to an expert commenting on the ultimate issue in a criminal matter." *Upton*, 512 F.3d at 401 (citing Fed.R.Evid. 704(b)).
>
> In light of such dangers, "district courts must take some precautions to

ensure the jury understands its function in evaluating this evidence. The jury needs to know when an agent is testifying as an expert and when he is testifying as a fact witness." *York*, 572 F.3d at 425 (internal citations omitted). The "dual testimony" situation "places an especially heavy burden on the district court to ensure that the jury understood its function in evaluating the evidence," particularly where the conduct at question may appear innocent. [*United States v.*] *Parra*, 402 F.3d [752,] 759 [ (2005) ](quotation omitted). To take the necessary precautions, the court can give an appropriate cautionary instruction and require examination of the witness in such a way as to make clear when the witness is testifying to fact and when he is offering his opinion as an expert. *York*, 572 F.3d at 425; *see also Farmer*, 543 F.3d at 370. Other precautions include the government establishing the proper foundation for the witness's expert opinions and the district court allowing rigorous cross-examination. *York*, 572 F.3d at 425.

In *York*, the defendant argued that an officer impermissibly testified as both an expert and fact witness in the same trip to the witness stand. *Id.* The government established an adequate foundation for the witness's testimony and the court put no limits on the defense's cross-examination, but we noted that the district court and the government were less vigilant in instructing the jury and structuring the witness's testimony. *Id.* at 425–26. The court, as in this case, instructed the jury at the end of the trial how it should evaluate expert opinion testimony, but we noted that "[i]t would have been far more effective for the court to have explained [the witness's] dual role to the jury before [the witness] testified and then flag for the jury when

[the witness] testified as a fact witness and when he testified as an expert." *Id.* at 426; *see also Upton,* 512 F.3d at 401 (cautionary instruction given *before* the witness testified and twenty-minute break given between the two types of testimony).

We were even more concerned in *York* with the structure of the witness's testimony. 572 F.3d at 426. We noted that the government at times signaled to the jury that the witness was relying on his expertise when answering questions prefaced with phrases like, "based on your experience in crack cocaine investigations ...," which helped minimize jury confusion. *Id.* But the government would switch back to questioning the witness about the investigation, and then after several moments into the witness's factual testimony, question him as an expert. We explained that "[s]eamlessly switching back-and-forth between expert and fact testimony does little to stem the risks associated with dual-role witnesses." *Id.* Other questions explicitly mixed the witness's dual basis of knowledge, leaving the jury to wonder whether the expert or case agent was testifying. We concluded that "[g]iven, this heightened possibility for jury confusion, coupled with the lack of a timely cautionary instruction and the fact that we cannot discern whether [the witness's] interpretations were actually based on his expertise or a conversation with [the informant]," the court erred (albeit harmlessly) in admitting the testimony. *Id.*

In *Farmer,* 543 F.3d at 369, an agent also testified as a fact witness regarding the investigations' progress and events and as an expert witness to assist the jury in understanding the coded drug language contained in recorded conversations. Unlike in *York,* however, we found sufficient precautions taken where

the district court required the government to establish the proper foundation for the agent's knowledge and the government prefaced the expert testimony by asking the agent the meaning of the coded language "based on his expertise" (the government, however, did not preface each question that elicited the agent's expert opinion in this way). *Id.* at 371 & n. 2. We also noted that the court "gave the appropriate cautionary instruction regarding expert testimony, instructing the jury that it could judge that testimony the same way it judges fact witnesses' testimony, and could '[g]ive the testimony whatever weight you think it deserves....'" *Id.* at 371. (Based on our review of the record in *Farmer* it appears that this instruction was given after the close of the evidence.) We further reasoned that the district court allowed the defense to extensively cross-examine the agent about the coded drug terms, his familiarity with other drug terms, and the factual aspects of his testimony. *Id.*

We concluded in *Farmer* that "[i]n light of these safeguards, any risk that the jury could have confused [the agent's] direct observations with his expert knowledge of the code words was adequately alleviated." *Id.; see also Parra,* 402 F.3d at 759–60 (sufficient precautions taken where agent was qualified as an expert, jury was given a cautionary instruction, and defense counsel engaged in rigorous cross-examination of agent regarding his expertise and substance of testimony).

*Christian,* 673 F.3d at 712–714.

■ Similarly, in this case, the trial court, the Commonwealth, and defense counsel discussed the scope of Agent Carolina's testimony prior to trial. The trial court stated:

[I]t's difficult for me to make a global ruling on the extent to which Agent Carolina is going to be able to testify because it would be making a decision in a vacuum because I'm not sure exactly what the Commonwealth is going to be eliciting.

However, prior to Agent Carolina testifying, I am going to give a cautionary instruction regarding his testimony as an opinion witness, and then I will give a cautionary instruction after he testifies regarding his testimony.

I am going to ask the Commonwealth that before Agent Carolina testifies, that if they are going to offer his as an expert, obviously they are going to have to lay a proper foundation for expert testimony, subject to cross-examination on qualifications.

If he is then qualified as an expert, I'm going to ask that the Commonwealth, to the extent that it is possible, when the Commonwealth asks questions of Agent Carolina, I'm going to ask the Attorney General to delineate the transition between the examination of the agent as an expert witness and questions [ ] relating to his role as a fact witness wherever possible. And I realize there will be some gray area, but to the extent that it's possible.

For example, when eliciting an expert opinion, I'm going to ask that the Commonwealth use language similar to something to the extent of whether it is the opinion or the testimony is based upon the agent's expertise or training and experience as opposed to his lay opinion or his factual testimony regarding his investigation in this case.

Of course, I will allow extensive cross-examination by defense counsel of the agent about his expert opinion or about any opinions, for that matter.

N.T., 4/6/2011, at 357–358.

The Commonwealth called Agent Carolina and questioned him extensively regarding his qualifications in narcotics investigations and drug language, and offered him as an expert for those purposes. *Id.* at 417–424. Defense counsel rigorously cross-examined Agent Carolina on his qualifications, notably pointing out that it was Agent Carolina's first time testifying as an expert. *Id.* at 425–455. The trial court then accepted Agent Carolina as an expert, without objection, and issued the following jury instruction:

Ladies and gentlemen, before we proceed, I need to explain to you what it means to be qualified as an expert. I am going to accept Agent Carolina as an expert, as requested by the Commonwealth.

However, an expert witness is a person who has special knowledge, skill, or training in some science, art, profession, occupation, or subject that the witness acquired by training, education, or experience.

Because an expert has this special knowledge or special training that is out of the ordinary, he or she may be able to supply the jurors with some specialized information, explanation, and opinions that will help you decide the case.

Regular witnesses are bound by two limitations that do not apply to an expert. First, a regular witness generally can testify only to things that he or she personally perceived, things that they saw or overheard.

Second, a regular witness, witnesses are not allowed to express opinions about matters that require some specific knowledge or skill. By contrast, an expert is allowed to express an opinion

about a matter that is within the area of his or her expertise.

Furthermore, while an expert may base an opinion on things personally perceived, he or she may also base an opinion on factual information learned from other sources.

Now, if an expert bases an opinion on things that are not personally perceived, he or she can describe the information on which he or she relies and identify the source when explaining his or her opinion.

But remember, you as jurors are the sole judges of the credibility; that is, believability of the testimony and the weight of all testimony.

The fact that the lawyers and I have referred to certain witnesses, or in this case Agent Carolina as an expert, and that the witnesses may have some special knowledge or skill does not mean that their testimony or their opinions are correct.

When you are determining the credibility and the weight of any witness, expert or any other witness, and the opinions, consider all of the factors which I described earlier that are relevant when evaluating the testimony of any witness.

You should also consider all of the things bearing on credibility and weight, including the training, the experience, the ability of each expert to obtain information, the factual information on which the expert bases his or her opinion, the source and reliability of that information, and the reasonableness of the explanation.

Now, in this particular case you will hear testimony from Agent Carolina, who is testifying as an opinion witness. You should judge his testimony in the same way that you judge the testimony of other witnesses. The fact that he has given an opinion does not mean that it is binding on you or that you are required to accept it.

In deciding how much weight to give it, you should consider Agent Carolina's qualifications, how he reached his conclusions, and the reasons given for his opinions, as well as the other evidence presented in the case.

Remember, most importantly, you alone decide how much of a witness' testimony to believe and how much weight it deserves.

*Id.* at 455–458.

A large portion of the evidence in this case consisted of over one hundred legally intercepted telephone conversations. The Commonwealth entered each conversation into evidence and asked Agent Carolina to interpret those calls in both expert and lay capacities. In order to avoid jury confusion, the trial court directed the Commonwealth to clarify when Agent Carolina's testimony, given in the form of an opinion, was based upon his expert knowledge of drug jargon, as opposed to his testimony regarding the facts as personally perceived during the investigation. *Id.* at 496. Thereafter, the trial court issued another cautionary instruction regarding Agent Carolina's lay testimony. *Id.* at 500. The trial court issued cautionary instructions regarding Agent Carolina's dual capacity as a witness prior to his testimony on at least three other occasions throughout trial, as well. *Id.* at 546–547; 703–704; 953–954. Before deliberations, the trial court once again instructed the jurors regarding lay versus expert testimony and told them that they were solely responsible for making credibility determinations. *Id.* at 1643–1650.

■ In Pennsylvania, "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v.*

*Spotz,* 587 Pa. 1, 896 A.2d 1191, 1224 (2006), *citing Commonwealth v. Brown,* 567 Pa. 272, 786 A.2d 961, 971 (2001) (*Brown II* ); *Commonwealth v. O'Hannon,* 557 Pa. 256, 732 A.2d 1193, 1196 (1999) ("Absent evidence to the contrary, the jury is presumed to have followed the trial court's instructions."). In the case *sub judice,* Appellant does not present evidence, nor does he suggest that the jury disregarded the instructions. Thus, we may presume that the jury was able to differentiate between the two types of evidence presented by Agent Carolina.

Moreover, after careful review of the notes of testimony from trial, we discern that the trial court employed additional safeguards to ensure that the jury understood its function in evaluating the evidence. Based on the foregoing, we conclude the trial court properly allowed the expert testimony for the limited purpose of decoding drug jargon and the jury was properly apprised of that limitation.

The trial court also allowed Agent Carolina to testify regarding his personal perceptions regarding the investigation. When Agent Carolina opined that Appellant was one of the parties to a recorded conversation, defense counsel rigorously cross-examined him on the bases of that statement. Agent Carolina testified that he had spoken to Appellant on a prior occasion and he was able to match the voices. N.T., 4/6/2011, at 485–486. There was no suggestion that Agent Carolina relied upon expertise or anything other than his personal observations for that assessment. Moreover, throughout the course of trial, defense counsel thoroughly cross-examined Agent Carolina to clarify that his investigation was based upon his personal perceptions and that his expert opinion was limited to drug jargon decoding. In addition, as previously noted, the trial court carefully explained to the jury that Agent Carolina was testifying in his capacity as both an expert and lay witness. Again, we presume that the jury followed the court's instructions.

In sum, we conclude that the trial court did not err in allowing Agent Carolina to testify in dual capacities. The Rules of Evidence do not prohibit such conduct. Moreover, the trial court took significant steps to minimize any juror confusion. The trial court was diligent in exercising its gate keeping function. The jury received multiple cautionary instructions throughout trial. The trial court specifically directed the Commonwealth to delineate between Agent Carolina's expert and fact-based opinions, which it did. Defense counsel was permitted to engage in rigorous cross-examination of Agent Carolina regarding his expertise and the substance of his testimony. For all of the foregoing reasons, it was proper to allow a single witness to testify in both expert and lay capacities.

Judgment of sentence affirmed.

FITZGERALD, J., concurs in the result.

**K.J.P., Appellee**