J-A02041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRANDON OBRYAN BOWERS | : | |
| | : | |
| Appellant | : | No. 744 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of Mercer County Criminal Division at
No(s): CP-43-CR-0001023-2020

BEFORE: BOWES, J., OLSON, J., and MURRAY, J.

MEMORANDUM BY OLSON, J.:                    **FILED: MAY 3, 2023**

Appellant, Brandon Obryan Bowers, appeals from the judgment of sentence entered on December 29, 2021, as made final by the denial of his post-sentence motion on June 10, 2022, following his jury trial convictions for simple possession of narcotics, possession with intent to deliver narcotics, recklessly endangering another person, and criminal use of a communication facility.[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  On July 15, 2020, the Commonwealth filed a criminal complaint alleging that, on July 12, 2019, Appellant delivered fentanyl to Michael

---

[1] 35 P.S. § 780-113(a)(16), 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 2705, and 18 Pa.C.S.A. § 7512(a), respectively.

Herndon (the decedent) who ultimately overdosed and died.[2]    Following a three-day trial, on November 18, 2021, the jury convicted Appellant of the aforementioned crimes.  On December 29, 2021, the trial court sentenced Appellant to an aggregate term of 10 to 20 years of imprisonment, consecutive to any sentence Appellant was already serving.  On January 3, 2022, the trial court filed an amended sentencing order merging the sentences imposed for simple possession of narcotics and possession of narcotics with intent to deliver.  This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

  I.    Did the trial court err in permitting Officer Jesse DiPietro to testify in the capacity as an expert witness and render an expert opinion when he had not been so qualified?

  II.   Did the trial court err in depriving Appellant of the right to cross-examine Officer Jesse DiPietro related to his training and experience in the field of narcotics when he testified in the capacity as an expert witness and rendered an expert opinion?

_____

[2]    In addition to the crimes for which Appellant was convicted, the Commonwealth charged Appellant with third-degree murder, involuntary manslaughter, and drug delivery resulting in death.  *See* 18 Pa.C.S.A. §§ 2502(c), 2504(a), and 2506(a), respectively.  The jury, however, ultimately acquitted Appellant of these homicide-related offenses.

[3]  On January 7, 2022, the trial court granted Appellant's extension request to permit the filing of a post-sentence motion after the receipt of the trial transcripts.  Appellant filed a timely post-sentence motion on March 21, 2022.  The trial court denied relief by order entered on June 10, 2022.  Thereafter, Appellant filed a timely notice of appeal on June 21, 2022.  On June 23, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied timely on July 7, 2022.  On August 15, 2022, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

III. Did the trial court err in permitting the Commonwealth to introduce evidence related to the possession and distribution of marijuana to an unknown party as the same was irrelevant, overly prejudicial and the Commonwealth failed to file proper notice under [Pa.R.E.] 404(b)?

Appellant's Brief at 11 (complete capitalization omitted).

Appellant's first two issues pertain to the admission of testimony by Commonwealth trial witness, Officer Jesse DiPietro and, thus, we will examine them together. First, Appellant argues that Officer DiPietro testified in the capacity as both an expert and lay witness when the Commonwealth elicited him "to render an expert opinion even though he had not been identified as such or qualified in that capacity." *Id.* at 20. Appellant claims that Pennsylvania courts have routinely held that expert testimony is required to decipher for a jury "coded and encrypted language utilized by drug traffickers." *Id.* at 19 (citation omitted). Appellant cites an exchange at trial, wherein the Commonwealth questioned Officer DiPietro about his training and experience with drug investigations and observations regarding the use of code or slang narcotics terms and the average length of drug sale conversations. *Id.* at 20-23. Although Officer DiPietro was not offered as an expert, Appellant argues that the officer "gave an opinion based upon his training that he believed that the communications between Appellant and [the victim] were consistent with the sale and delivery of narcotics." *Id.* at 33.

In his second issue presented, Appellant contends that the trial court compounded its initial error by denying Appellant the opportunity to

- 3 -

cross-examine Officer DiPietro "as to his training, experience, qualifications, and/or expert opinion." *Id.* at 41. Appellant claims, therefore, that his right to confront and cross-examine Officer DiPietro regarding his qualifications as an expert was also violated. *Id.* at 41-45.

Our Supreme Court has previously determined:

An appellate court generally reviews a trial court's decisions regarding the admissibility of evidence for an abuse of discretion. ***Commonwealth v. Johnson***, 42 A.3d 1017, 1027 (Pa. 2012) ("An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such a lack of support so as to be clearly erroneous.") (citations and quotations omitted). [When the examination or interpretation of our evidentiary rules involves a question of law our] standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Brown***, 52 A.3d 1139, 1176 (Pa. 2012). When interpreting our rules of evidence, we must ascribe to the words of these rules their plain and ordinary meaning. *Id.* (citation omitted).

[Pennsylvania] Rule [of Evidence] 701 permits lay witnesses to provide opinion testimony only if such testimony meets three limiting criteria:

### Pa.R.E. 701. Opinion Testimony by Lay Witnesses

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. The first and second criteria outlined in the rule are self-explanatory, in that they simply require that a [lay] witness's opinion testimony be based upon personal knowledge and be helpful to the jury in understanding the witness's testimony or a

fact at issue. The final limiting criteria precludes lay witness opinion testimony based upon scientific, technical, or other specialized knowledge that falls within the realm of expert opinion testimony as outlined by Rule 702, which provides as follows:

**Pa.R.E. 702. Testimony by Expert Witnesses**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. [Our Supreme Court has] explained that "expert testimony is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman." **Commonwealth v. Duffey**, 548 A.2d 1178, 1186 (Pa. 1988) (citation omitted). [Our Supreme Court has] also recognized that the standard for qualifying as an expert is a liberal one and the witness need only have "'any reasonable pretension to specialized knowledge on the subject matter under investigation'" and the weight to be given to the expert's testimony is for the factfinder. **Commonwealth v. Gonzalez**, 546 A.2d 26, 31 (Pa. 1988), *quoting* **Kuisis v. Baldwin-Lima-Hamilton Corp.**, 319 A.2d 914, 924 (Pa. 1974) (additional citation omitted); **see also** Comment, Pa.R.E. 702. [Moreover,] "expertise, whether acquired as a result of formal education or by experience, is expertise." **Commonwealth v. Auker**, 681 A.2d 1305, 1317 (Pa. 1996).

\* \* \*

In [**Commonwealth v.**] **Huggins**, [68 A.3d 962 (Pa. Super. 2013),] the Superior Court considered whether Rules 701 and 702 precluded a police officer from testifying as both a lay and expert witness. **Huggins**, 68 A.3d at 966, 974. The [**Huggins**] court ultimately held that the plain language of these rules "do not

- 5 -

preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder," so long as the jury is properly instructed to avoid confusion. *Id.* at 967, 974. In reaching this conclusion, the panel referenced federal case law highlighting the difficulty in distinguishing between an officer's lay and expert testimony:

> We have explained that a law enforcement officer's testimony is lay opinion if it is limited to what he observed ... or to other facts derived exclusively from a particular investigation .... On the other hand, an officer testifies as an expert when he brings the wealth of his experience as an officer to bear on those observations and makes connections for the jury based on that specialized knowledge.

*Id.* at 969, *quoting* ***United States v. Christian***, 673 F.3d 702, 709 (7th Cir. 2012) (additional quotations and citations omitted). The panel also acknowledged that distinguishing between an officer's expert and lay testimony "is often far from clear" when that officer possesses specialized knowledge and was also personally involved in [investigating] the facts underlying the case. *Id.* It explained that "'the inferences officers draw when observing and responding to situations cannot always be separated from the expertise they bring to evaluate those situations. Their observations are guided by experience and training and thus, at least some of their fact testimony will be influenced by specialized knowledge.'" *Id. quoting* ***Christian***, 673 F.3d at 708.

***Commonwealth v. Jones***, 240 A.3d 881, 889–891 (Pa. 2020) (original brackets omitted).

In ***Commonwealth v. Rose***, 172 A.3d 1121 (Pa. Super. 2017), *citing* ***United States v. Kilpatrick***, 798 F.3d 365, 379 (6th Cir. 2015), this Court further recognized that law enforcement officers should be qualified as experts when interpreting intercepted conversations that use "slang, street language, and the jargon of the illegal drug trade." ***Rose***, 172 A.3d at 1130 (citation omitted). Whereas, an "officer's lay opinion is admissible only when the law

enforcement officer is a participant in the conversation, has personal knowledge of the facts being related in the conversation, or observed the conversations as they occurred." *Id.* (citation omitted). When a witness testifies in dual capacities, the trial court must exercise "its gatekeeping function" to "minimize any juror confusion" by directing the Commonwealth "to delineate between" the witness' "expert and fact-based opinions[,]" permit "rigorous cross-examination" of the proffered witness "regarding his expertise and the substance of his testimony" and issue "cautionary instructions throughout trial." *Huggins*, 68 A.3d at 974.

Finally, we note:

It is well settled that the test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. Such knowledge need not be obtained through formal education but may have been acquired by other training or experience. Moreover, a defendant's right of confrontation includes the right to cross-examine witnesses about possible motives to testify.

\* \* \*

The scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion.

*Commonwealth v. Saunders*, 946 A.2d 776, 785–786 (Pa. Super. 2008) (cleaned up); *see also Commonwealth v. Baez*, 720 A.2d 711, 727 (Pa. 1998) ("The qualification of an expert witness is a matter within the sound discretion of the trial court and will be reversed only for a clear abuse of discretion.").

Here, applying the foregoing legal precepts, we agree with Appellant that the trial court erred in concluding that the challenged portion of Officer DiPietro's testimony was offered and admitted solely as lay opinion. The Commonwealth questioned Officer DiPietro at length about his expertise in "drug interdiction," his work with the Attorney General Mercer County Drug Task Force, and his special training in narcotics investigation including drug identification, lingo, and packaging. N.T., 11/16/2021, at 240-245. Moreover, while Officer DiPietro was called upon primarily as a fact witness to testify regarding his investigation of the charged crimes, we have little doubt that Officer DiPietro summoned the wealth of his experience in law enforcement when he explained for the jury the nature of the drug trafficking exchanges that occurred in this case as well as the meaning of certain coded words used in exchanges between Appellant and the decedent. As to those aspects of Officer DiPiero's testimony, there is no dispute that he was not a participant in the text messages, had no personal knowledge of the facts being related in the conversation, and/or did not observe the conversations as they occurred. Instead, Officer DiPietro was asked to provide his insights gained through his occupational training and experience, not within the average layperson's knowledge as required under Rule 702(a), to describe encrypted jargon used in narcotics' sales. **See Rose**, 172 A.3d at 1131 (Witness "should have been qualified as an expert in order to testify to the meaning of any of the particular words within the conversations."). As such, the trial court should not have permitted Officer DiPietro to testify as an expert, or as a

witness testifying in dual capacities.[4]  Accordingly, we conclude that the trial court misapplied the law and abused its discretion in permitting Officer DiPietro to testify as an expert witness regarding the content of Appellant's text messages with the decedent without first securing the proper formalities from the Commonwealth, allowing Appellant to fully cross-examine the witness regarding his training and experience, and then properly guiding and instructing the jury.

Having determined that the trial court abused its discretion, we next turn to whether the error was harmless.  **See id.**, *citing* **Commonwealth v. McClure**, 144 A.3d 970, 975–976 (Pa. Super. 2016) ("In the event of an erroneous admission of evidence, a verdict can still be sustained if the error was harmless.").  "Harmless error exists if the [Commonwealth] proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the

---

[4]  The Commonwealth is required to disclose expert opinions during pretrial discovery and inspection.  **See** Pa.R.Crim.P. 573(B)(1)(e).  The trial court may order "an expert whom the attorney for the Commonwealth intends to call in any proceeding" to prepare a report.  Pa.R.Crim.P. 573(B)(2)(b).  The trial court is also required to properly instruct the jury to avoid confusion when a witness testifies in a dual capacity as a fact and expert witness.  **Huggins**, 68 A.3d at 974.  Here, there is no dispute that these requirements were not met.

- 9 -

verdict." ***Commonwealth v. Burno***, 154 A.3d 764, 787 (Pa. 2017) (citation omitted).

In this case, in addition to the text messages between Appellant and the decedent, the Commonwealth presented the testimony of two individuals, Michelle Jordan (Jordan) and Travis Pratt (Pratt), who were living with Appellant at the time of the alleged narcotics delivery. Jordan testified that Appellant appeared agitated when he learned that the decedent suffered a fatal overdose the night before. N.T., 11/17/2021, at 21. Appellant admitted to Jordan that the text message he sent to the decedent referred to fentanyl and that he was nervous that the message was incriminating. ***Id.*** at 24. Appellant asked Jordan to help him manufacture an alibi and an excuse for the text messages. ***Id.*** at 28-34. Jordan testified that Appellant asked her to "help him figure out how to erase" the text messages, because he was "concerned he would get in trouble … for providing [the decedent] the drugs." ***Id.*** at 39-40. Appellant "wanted [Jordan] to tell the police that when he saw [the decedent] that night, the night that [he] passed away, [] that [Appellant] was dropping off headphones." ***Id.*** at 44. Jordan further testified that Appellant stated that "he'd given [the decedent] more [fentanyl] in the past and nothing like this ha[d] ever happened." ***Id.*** at 39. Jordan confirmed that Appellant had fentanyl on the night the decedent died, because she and Appellant used it. ***Id.*** at 58-59. Likewise, Pratt testified Appellant told him that the police confiscated his cellular telephone, Appellant gave the decedent

"stuff" the day before he died, Pratt believed the term "stuff" referred to narcotics, and Appellant exclaimed to Pratt, "I'm fucked." *Id.* at 106-107.

The Commonwealth additionally presented the testimony of Matthew Thompson (Thompson). In 2020, Thompson "frequented the same hotel" as Appellant and testified that Appellant admitted that he killed the decedent. N.T., 11/18/2021, at 39-41. Thompson further testified that Appellant asked him to kill Jordan and Pratt for $10,000.00 for "giving the police information." *Id.* at 41-42.

Finally, we note that the Commonwealth also presented the testimony of Detective Michael Songer (Detective Songer), in his capacity as a narcotics expert.[5] *Id.* at 57-68. Detective Songer testified that the text messages at issue contained "drug lingo communication[s]" wherein Appellant "texts [the decedent] and tells him that he had some fire gray that he wanted him to try." *Id.* at 65. Detective Songer explained that "[g]ray is what is commonly referred to as fentanyl … just based upon the color." *Id.* "[I]f it's higher potency or better quality, then it's referred to as fire." *Id.*

Based on this overwhelming evidence, we conclude that the trial court's error in permitting Officer DiPietro to testify as a lay witness regarding the meaning of the text messages was harmless. The error was *de minimus*, cumulative of other untainted evidence, and the prejudicial effect of the error was insignificant by comparison to the overwhelming evidence of guilt.

---

[5] The trial court accepted Detective Songer as an expert and Appellant did not object. N.T., 1/18/2022, at 62.

- 11 -

Furthermore, we note that the trial court instructed the jury to weigh the evidence and make its own credibility determinations. *See* N.T. 11/18/2021, at 139-145. We presume the jury followed the court's instructions. *See Rose*, 172 A.3d at 1131 (citation omitted). As such, we discern that Appellant is not entitled to relief on his first two issues as presented.

Next, Appellant argues that the trial court erred by permitting Detective Songer to testify regarding the distribution of marijuana to an unknown individual. Appellant's Brief at 45-58; *see also id.* at 53 ("Detective Songer was permitted to give an expert opinion that the day prior [to decedent's death], that [Appellant] had picked up a 'zip' *i.e.* ounce of marijuana to give to an unknown individual."). Appellant first contends that the testimony pertaining to the distribution of marijuana to an unknown individual constituted a prior bad act under Pa.R.E. 404(b). *Id.* Appellant next posits that the Commonwealth was required, but failed to, give proper notice that it was presenting Rule 404(b) testimony. *Id.* at 47-50.

> The text message at issue stated:
>
> I stopped yesterday. Nobody home. I had some fire gray I wanted you to try. I went over tonight for a zip for someone. But not getting any more until tomorrow after work. I barely have any. I have maybe a 30 for the next 24 hours, and I need a g for 24 hours, so it's gonna be a rough one until after work, brother. I'm sorry.

Trial Court Opinion, 8/15/2022, at 6.

- 12 -

As previously stated, we review the admission of evidence for an abuse of discretion. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). We have previously determined:

> Evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes. Nevertheless, evidence may be admissible in certain circumstances, where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character. Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident.[6] When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice.
>
> Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weigh[]ing the evidence impartially.
>
>> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque or highly prejudicial.

---

[6] "Additionally, evidence of prior crimes and bad acts may be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development." **Commonwealth v. Golphin**, 161 A.3d 1009, 1021 (Pa. Super. 2017), citing **Commonwealth v. Powell**, 956 A.2d 406 (Pa. 2008).

*Commonwealth v. Green*, 271 A.3d 393, 402 (Pa. Super. 2021) (internal citations and quotations omitted), *appeal denied*, 280 A.3d 329 (Pa. 2022).

Pursuant to Pa.R.E. 404(b)(3), before presenting prior bad act evidence, "[i]n criminal cases, the prosecution must provide reasonable written notice in advance of trial so that the defendant has a fair opportunity to meet it, or if the court excuses pretrial notice on good cause shown, of the specific nature, permitted use, and use of any such evidence[.]" Pa.R.E. 404(b)(3). The purpose of this rule "is to prevent unfair surprise, and to give the defendant reasonable time to prepare an objection to, or ready a rebuttal for, such evidence." Pa.R.E. 404, Comment. Where the Commonwealth has provided the defendant with discovery containing evidence of the prior bad acts, the defendant has sufficient notice of the proffered evidence prior to trial. *See Commonwealth v. Lynch*, 57 A.3d 120, 126 (Pa. Super. 2012), *citing Commonwealth v. Stallworth*, 781 A.2d 110, 118, n.2 (Pa. 2001).

On this issue, the trial court determined:

The full text message was shown to the jury to enable the jury to fully understand the context of the communication between Appellant and the deceased. Any reference to Appellant's providing drugs to a third party was stated in passing as it was neither the focus of the message nor the Commonwealth's purpose for introducing this particular message. The Commonwealth did not introduce the evidence to prove Appellant's criminal propensity as prohibited by Pa.R.E. 404(b), but to establish Appellant communicated about and supplied the deceased with drugs.

Trial Court Opinion, 8/15/2022, at 7.

Upon review of the certified record and applicable law, we discern there was no abuse of discretion. Initially, we note that the text message at issue was provided during discovery, so we reject Appellant's contention that he did not have proper notice. Next, we observe that the text message at issue showed a close relationship between Appellant and the decedent wherein Appellant brought a sample of fentanyl to the decedent and did so without solicitation. The text message revealed an established association, a motive for Appellant to obtain an additional supply of fentanyl to deliver to the decedent, and a plan to meet for an exchange. Moreover, Detective Songer testified that the subsequent responses to the above cited text message revealed that the decedent "was confused about what [drugs] he thought [Appellant] had" for sale. N.T., 11/18/2021, at 67. In one response, Appellant asked the decedent if he wanted marijuana. *See id.* at 66 ("[Appellant] replied back, bud with a question mark. 'Bud' would be slang for marijuana, for marijuana buds, and he asks [the decedent], you want to, with a question mark."). The decedent responded that he could not smoke marijuana. *Id.* at 66-67. Detective Songer, therefore, interpreted the text message at issue to mean that Appellant possessed marijuana available for delivery, but did not have enough fentanyl for the decedent and that he would not be able to get any more for 24 hours. *Id.* at 72. Thus, the portion of the text relating to the sale of marijuana to an unknown person was part of a chain or sequence of events that formed the history of the case and was part of its natural development. Furthermore, this evidence was not introduced to

- 15 -

show Appellant had a general propensity to sell narcotics. Rather, the Commonwealth sought to clarify that the decedent requested, and ultimately received fentanyl but not marijuana, from Appellant. The admitted evidence was relevant to the question of whether Appellant delivered drugs to the decedent which resulted in his death.[7] Accordingly, for all of the foregoing reasons, Appellant is not entitled to relief on his final claim on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2023

---

[7] We note, however, that the jury acquitted Appellant on all charges related to the decedent's death. Thus, it appears that the jurors believed that Appellant delivered drugs to the decedent, but were unable to conclude that the fatal overdose resulted from that delivery.