**[J-17-2020]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 24 WAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered July 27, |
| | : | 2018 at No. 1636 WDA 2016, |
| v. | : | affirming in part and vacating in part |
| | : | the Judgment of Sentence of the |
| | : | Court of Common Pleas of |
| ROD L. JONES, JR., | : | Allegheny County entered June 28, |
| | : | 2016 at No. CP-02-CR-0008782- |
| Appellant | : | 2015 and remanding. |
| | : | |
| | : | SUBMITTED:  April 16, 2020 |


**OPINION**


**JUSTICE MUNDY**                                    **DECIDED:  OCTOBER 30, 2020**

In this appeal by allowance, we consider whether opinion testimony from a detective concerning the behavior of child victims in response to sexual abuse, informed by that detective's training and experience, constitutes lay or expert testimony under our rules of evidence.  As a necessary corollary, we also address the continued validity of our decision in *Commonwealth v. Dunkle*, 602 A.2d 830 (Pa. 1992),[1] in light of the legislature's enactment of 42 Pa.C.S. § 5920 (permitting expert testimony concerning victim behavior in response to sexual abuse in certain criminal proceedings involving

---

[1] In *Dunkle*, discussed more fully *infra*, we held inadmissible expert testimony concerning typical behavior patterns displayed by child victims of sexual abuse, reasoning it was easily understood by laypersons, did not require expert analysis, and invaded the jury's province of determining witness credibility.  *Dunkle*, 602 A.2d at 836-38.

sexual offenses). For the reasons that follow, we reverse the Superior Court's order and remand for a new trial.

## I. Facts and Procedural History

Appellant Rod L. Jones, Jr. was charged with rape and various sexual offenses following allegations by his stepdaughter ("the victim") of repeated sexual abuse over a period of several years. According to the victim, the first instance of abuse occurred when she was thirteen years old. Appellant entered the victim's bedroom while she was sleeping and tried to penetrate her with his penis from behind. The victim pushed Appellant away, causing him to leave the room without completing the act. He committed additional assaults over the next several years, which included performing oral sex on the victim, forcing the victim to perform oral sex on him, and also engaging in vaginal intercourse. The victim did not tell anyone about these incidents for many years. She explained that Appellant told her no one would believe her. The victim also feared what Appellant would say about her to her mother. When the victim was seventeen years old, she eventually told her mother about the abuse.

On April 5, 2016, Appellant proceeded to a jury trial. Throughout the trial, defense counsel focused on discrepancies in the victim's recounting of events in an attempt to undermine her credibility. These discrepancies related to the timing and location of certain sexual assaults. At one point, the Commonwealth called as a witness Detective Scott Holzwarth, who interviewed the victim during the course of the investigation. The Commonwealth began its direct examination by asking Detective Holzwarth the following general questions:

> [The Commonwealth]: How are you currently employed?
>
> [Detective Holzwarth]: I'm a detective with the Allegheny County Police, and I work in the General Investigations Section.

> [The Commonwealth]: How long have you been employed in this capacity?
>
> [Detective Holzwarth]: Ten years.
>
> [The Commonwealth]: As a detective in the General Investigations Unit, do you handle all sorts of crimes or do you have a certain type of crime that you do more of?
>
> [Detective Holzwarth]: We do handle different types of crimes, but I do mostly crimes against people, which includes sex assaults and child abuse.
>
> [The Commonwealth]: And if you could estimate, during the course of your career, approximately how many child sexual assault cases have you investigated?
>
> [Detective Holzwarth]: Hundreds. I would have to do the math, but at least hundreds.

N.T. Trial, 4/6/16, at 97-98. The Commonwealth subsequently asked Detective Holzwarth questions specific to his investigation of this matter. Then, particularly relevant to this appeal, the following exchange occurred:

> [The Commonwealth]: Did [the victim] indicate whether or not this had been going on multiple times?
>
> [Detective Holzwarth]: Yes.
>
> [The Commonwealth]: And in your training and experience, Detective, do kids often have trouble remembering each and every time when this is an ongoing incident?
>
> [Detective Holzwarth]: Yes, they do. As a matter of fact, in our criminal complaints we normally put a little blurb in there that explains that victims —
>
> [Defense Counsel]: Your Honor, I would object to this as expert testimony. This is an opinion.
>
> The Court: I'm going to overrule.
>
> [The Commonwealth]: Please continue, Detective.

[Detective Holzwarth]: – that explains that victims sometimes have trouble remembering exact dates when events have happened.

[The Commonwealth]: And have you also found in your training and experience with your specific cases whether or not victims will have trouble recalling in each incident that they're assaulted every single detail of the assault?

[Detective Holzwarth]: Yes.

[The Commonwealth]: And do they often times get the times that those things happened confused with other times that they discuss with you?

[Detective Holzwarth]: Yes. Very often.

*Id.* at 100-101. On cross examination, defense counsel asked Detective Holzwarth if it was possible that a victim's delay in reporting or inability to provide details about sexual assault incidents could mean that no abuse occurred in the first instance, to which the detective agreed. *Id.* at 109-110.

The jury ultimately found Appellant guilty of rape, involuntary deviate sexual intercourse with a person under sixteen years of age, unlawful contact with a minor, aggravated indecent assault, sexual assault, statutory sexual assault, endangering the welfare of a child, corruption of minors, and indecent assault of a person under sixteen years of age.[2] The trial court sentenced Appellant to an aggregate term of twenty-seven to sixty years' imprisonment. Appellant filed a post-sentence motion, which the trial court denied. He then filed a timely notice of appeal to the Superior Court.

On appeal, Appellant argued, inter alia, that the trial court abused its discretion by allowing Detective Holzwarth to testify that child sexual assault victims are often unable to recall specific details and dates of sexual assaults. Appellant claimed that this evidence constituted expert testimony because it was not within the scope of knowledge possessed

---

[2] *See* 18 Pa.C.S. §§ 3121(a), 3123(a)(7), 6318(a)(1), 3125(a)(1), 3124.1, 3122.1(a)(2), 4304(a)(1), 6301(a)(1)(ii), and 3126(a)(8), respectively.

by the average layperson, but was rather based on the detective's specialized training and experience concerning child victim responses and behaviors to sexual assault. Appellant argued that absent qualification as an expert witness, the trial court should have precluded this testimony.

The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) addressing Appellant's claim that admission of the detective's testimony was improper. It explained that defense counsel's strategy at trial involved discrediting the victim. In light of these repeated attacks, the trial court concluded the Commonwealth "was entitled to question Detective Holzwarth regarding his experience with child victims." Trial Ct. Op., 5/5/17, at 9. It also recognized that while cross-examining Detective Holzwarth, defense counsel "was able to get the [d]etective to concede that an alternative reason the allegations by child victims lacked detail was that they never happened." *Id.* at 9-10. For this reason, the trial court alternatively concluded that any damage resulting from admission of Detective Holzwarth's testimony was remedied by defense counsel's effective cross-examination. *Id.* at 10.

The Superior Court affirmed in a divided, unpublished memorandum opinion. *Commonwealth v. Jones*, 1636 WDA 2016, 2018 WL 3598642 (Pa. Super. July 27, 2018). The majority explained that challenges to the admissibility of evidence typically rest within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Id.* at *2 (citing *Commonwealth v. Maloney*, 876 A.2d 1002, 1006 (Pa. Super. 2005)). It noted that an abuse of discretion "is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record." *Id.* (citing *Commonwealth v. Cameron*, 780 A.2d 688, 692 (Pa. Super. 2001) (citation and quotation omitted)). The majority then recounted the

language of Pennsylvania Rules of Evidence 701 and 702, which pertain to lay opinion and expert witness testimony, respectively. *Id.* at *2-3.

After reviewing the testimony at issue, the majority concluded that the trial court did not abuse its discretion by permitting the detective, without first being qualified as an expert witness, to provide opinion testimony about the inability of child victims of sexual abuse to recall specific dates and details of sexual assaults. *Id.* at *4. The majority reasoned that such testimony constituted permissible lay opinion testimony because it was based on information within the detective's personal knowledge and experience, in light of observations with similar child victims of sexual abuse. *Id.* It was also helpful to the trier of fact and was not based upon scientific, technical, or other specialized knowledge. *Id.* Thus, the Commonwealth was not required to qualify Detective Holzwarth as an expert witness in order for him to testify to this information. *Id.*

Senior Judge Eugene B. Strassburger filed a dissenting opinion which, in relevant part, disagreed with the majority's conclusion that the detective's testimony constituted lay opinion testimony. *Id.* at *8. He recognized that in *Dunkle*, this Court specifically found that testimony concerning the reasons why child victims of sexual abuse delay reporting incidents of sexual abuse, omit details regarding sexual abuse, and are unable to remember dates and times of instances of sexual abuse was within the understanding of lay persons and did not require expert analysis. *Id.* (citing *Dunkle*, 602 A.2d at 836-38). While *Dunkle* appears dispositive of the instant issue, Judge Strassburger noted that case predated the legislature's enactment of 42 Pa.C.S. § 5920, which now authorizes expert testimony on this subject matter. *Id.*

Judge Strassburger explained that in *Commonwealth v. Olivo*, 127 A.3d 769, 780 (Pa. 2015), this Court described Section 5920 as a substantive rule authorizing experts to testify to facts and opinions regarding specific types of victim responses and behaviors.

*Id.* No court, however, has explicitly addressed whether the enactment of Section 5920 effectively overruled *Dunkle*'s holding that opinions regarding responses by child sexual assault victims fall within the knowledge of laypersons. *Id.* (citing *Commonwealth v. Maconeghy*, 171 A.3d 707, 709 n.2 (Pa. 2017) (recognizing that *Dunkle* is "impacted by the enactment of Section 5920[,]" but noting that "specific effect of the statute" was beyond the scope of review) (additional citation omitted)). *Id.* Judge Strassburger opined that the holding in *Dunkle* in this regard is no longer valid when viewed alongside Section 5920, which "classifies such knowledge, when acquired through experience, training, or education in criminal justice related to sexual violence, as specialized." *Id.*

Turning to the merits, Judge Strassburger highlighted the majority's failure to address *Dunkle* and Section 5920 or assess whether the detective's testimony amounted to expert testimony under Rule 702. *Id.* Judge Strassburger explained that contrary to the majority's conclusion, Detective Holzwarth's testimony concerning victim responses following sexual abuse was explicitly based upon his training and experience as one who investigates sexual assaults, which falls squarely within the type of expert testimony permissible under Section 5920(b)(1). *Id.* (citing *Commonwealth v. Huggins*, 68 A.3d 962, 969 (Pa. Super. 2013) ("[A]n officer testifies as an expert when he brings the wealth of his experience as an officer to bear on those observations and makes connections for the jury based on that specialized knowledge.") (citation and quotation omitted); *Commonwealth v. Powell*, 171 A.3d 294, 307 (Pa. Super. 2017) (holding a police officer may testify as an expert witness based upon knowledge gained from practical and occupational training)). The testimony was therefore impermissible absent any attempt by the Commonwealth to qualify Detective Holzwarth as an expert witness. *Id.* Thus, Judge Strassburger concluded that the trial court erred by admitting the testimony and such an error called for a new trial. *Id.*

Appellant filed a petition for allowance of appeal. We granted allowance of appeal to address the following related issues:

> 1. Whether testimony from a detective about victim responses and behaviors, when based on that detective's training, experience, and specialized knowledge, constitutes expert testimony and whether permitting such testimony from a lay witness is inconsistent with the plain language of Pa.R.E. 701, Pa.R.E. 702, and *Commonwealth v. Huggins*, 68 A.3d 962 (Pa. Super. 2013)?
>
> 2. Whether the General Assembly's enactment of 42 Pa.C.S. § 5920 (relating to expert testimony in certain criminal proceedings) legislatively overruled this Honorable Court's decision in *Commonwealth v. Dunkle*, [ ] 602 A.2d 830 ([Pa.] 1992), which held that specific types of victim responses and behaviors are within the range of common experience, easily understood by lay people, and for which expert analysis is inappropriate?

*Commonwealth v. Jones*, 207 A.3d 913 (Pa. 2019) (per curiam).

## II. Admissibility of Detective Holzwarth's Testimony

## A. Parties' Arguments

We now turn to the parties' arguments concerning the admissibility of the detective's testimony. Appellant argues that testimony from a detective concerning victim behavior in response to sexual abuse, when based upon that detective's training, experience, and specialized knowledge as a law enforcement officer, is not permissible lay opinion testimony under Rule 701. Appellant's Brief at 12. Appellant emphasizes that lay opinion testimony must be based upon personal knowledge and must not involve specialized knowledge within the scope of Rule 702. *Id.* at 15. Appellant avers that the detective's testimony was not based upon personal knowledge, as it was beyond that which an ordinary witness could conclude from observation and "based on nothing more than his personal perceptions of [child victims'] reports of alleged abuse." *Id.* at 18-19. Appellant also argues that the detective's testimony was based upon specialized knowledge gained through experience as a law enforcement officer and therefore falls squarely within the realm of expert testimony. *Id.* at 18-19. For these reasons, Appellant

argues that Detective Holzwarth's testimony was inadmissible, absent qualification as an expert. *Id.*

Appellant highlights the distinction between lay and expert testimony by relying on *Huggins*, in which the Superior Court held that Pa.R.E. 701 and 702 "do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder." *Id.* at 21-22 (quoting *Huggins,* 68 A.3d at 967). Based on *Huggins*, Appellant argues that "the Commonwealth plainly could have proffered Detective Holzwarth as a dual-capacity witness[,]" but instead "evaded the reliability requirements inherent in [Rule] 702 through the simple expedient of proffering [him] in lay witness clothing." *Id.*

Appellant further maintains that both this Court and the legislature have recognized that testimony concerning victim behavior and responses to sexual abuse, if admissible, may only be offered by a properly qualified expert. *Id.* at 22. He claims that this Court has never held testimony concerning victim behavior in response to sexual abuse to be permissible lay opinion testimony. *Id.* Appellant also points to the legislature's passage of Section 5920, which explicitly classifies knowledge pertaining to the dynamics of sexual violence, victim responses to sexual violence, and the impact of sexual violence on victims during and after being assaulted, as expert testimony when gleaned from experience with or specialized training related to sexual assault. *Id.* at 24-25. Finally, Appellant asserts that the trial court's admission of the instant testimony, which had the sole effect of improperly bolstering the victim's credibility, was so prejudicial as to warrant a new trial. *Id.* at 25.

The Commonwealth argues that the detective's testimony did not constitute expert testimony but was rather properly admitted as lay testimony. Commonwealth's Brief at 10. It maintains that contrary to expert testimony, the detective relayed information based

solely upon personal observations rather than reference to any fact, testimony, or empirical data that would require it to be proffered as expert testimony. *Id.* at 13. The Commonwealth notes that, although the detective spoke to observations that jurors had not experienced in the same manner, his testimony was nonetheless within the realm of common understanding and did not intrude into an area reserved for expert testimony. *Id.* The Commonwealth further asserts that the detective's status as a law enforcement officer did not preclude him from offering lay opinion testimony. *Id.* at 14 (citing *Huggins*, 68 A.3d at 967).

The Commonwealth also disagrees with Appellant's contention that the instant testimony rose to the level of expert testimony simply because the detective was asked about training and experience as a police officer prior to providing a response. *Id.* at 15. It submits that "merely framing a question with the words training and experience does not elevate the resulting answers to expert testimony." *Id.* at 17. The Commonwealth asserts that the detective's testimony, which merely stated general observations that child victims of sexual assault confuse dates and have trouble recalling every detail of incidents, was a common sense observation capable of being understood by the average person. *Id.* at 17-18 (citing *Dunkle*, 602 A.3d at 836-38).

The Commonwealth further maintains that even if the detective's testimony constituted expert testimony, its admission did not result in prejudice that would require reversal. *Id.* at 21 (citing *Commonwealth v. Fulton*, 179 A.3d 475, 493 (Pa. 2018)). It explains that while the detective stated child victims of sexual abuse often forget dates and details of incidents, he alternatively acknowledged on cross-examination that confusion regarding these facts may also mean an assault did not occur. *Id.* at 22. Furthermore, the Commonwealth argues that despite defense counsel's repeated attempts to undermine the victim's credibility, the detective never rendered an opinion as

to whether or not the victim in this case was telling the truth.  *Id.*  Thus, admission of the testimony was harmless.  *Id.* at 23.

## B. Analysis

An appellate court generally reviews a trial court's decisions regarding the admissibility of evidence for an abuse of discretion.  *Commonwealth v. Johnson,* 42 A.3d 1017, 1027 (Pa. 2012) ("An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such a lack of support so as to be clearly erroneous.") (citations and quotations omitted).  This case additionally requires us to examine the proper interpretation of our rules of evidence, a question of law for which our standard of review is de novo and our scope of review is plenary.  *Commonwealth v. Brown*, 52 A.3d 1139, 1176 (Pa. 2012).  When interpreting our rules of evidence, we must ascribe to the words of these rules their plain and ordinary meaning.  *Id.* (citation omitted).

Whether Detective Holzwarth's testimony, predicated on his knowledge and experience as a police officer, was properly admitted as lay opinion testimony requires an examination of two relevant Pennsylvania Rules of Evidence.  Rule 701 permits lay witnesses to provide opinion testimony only if such testimony meets three limiting criteria:

**Pa.R.E. 701. Opinion Testimony by Lay Witnesses**

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception;

> (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and

> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. The first and second criteria outlined in the rule are self-explanatory, in that they simply require that a witness's opinion testimony be based upon personal knowledge and be helpful to the jury in understanding the witness's testimony or a fact at issue. The final limiting criteria precludes lay witness opinion testimony based upon scientific, technical, or other specialized knowledge that falls within the realm of expert opinion testimony as outlined by Rule 702, which provides as follows:

> **Pa.R.E. 702. Testimony by Expert Witnesses**
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
> >
> > (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> >
> > (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. We have explained that "[e]xpert testimony is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman." *Commonwealth v. Duffe*y, 548 A.2d 1178, 1186 (Pa. 1988) (citation omitted). We have also recognized that the standard for qualifying as an expert is a liberal one and the witness need only have "'any reasonable pretension to specialized knowledge on the subject matter under investigation'" and the weight to be given to the expert's testimony is for the factfinder. *Commonwealth v. Gonzales*, 546 A.2d 26, 31 (Pa. 1988) (quoting *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 319 A.2d 914, 924 (Pa. 1974) (additional citation omitted)); *see also* Comment, Pa.R.E. 702. We have also noted that "[e]xpertise, whether acquired as a

result of formal education or by experience, is expertise." *Commonwealth v. Auker*, 681 A.3d 1305, 1317 (Pa. 1996).

We conclude that the opinion testimony by Detective Holzwarth on the inability of child victims of sexual abuse to recall specific dates and details was based upon scientific, technical, or other specialized knowledge within the scope of Rule 702. Specifically, Detective Holzwarth based his testimony on his training and experience investigating sexual assaults. Nevertheless, this did not require Detective Holtzwarth to testify solely as an expert. The Superior Court's decision in *Huggins* is helpful in this regard.

In *Huggins*, the Superior Court considered whether Rules 701 and 702 precluded a police officer from testifying as both a lay and expert witness. *Huggins*, 68 A.3d at 966, 974. The court ultimately held that the plain language of these rules "do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder[,]" so long as the jury is properly instructed to avoid confusion. *Id.* at 967, 974. In reaching this conclusion, the panel referenced federal case law highlighting the difficulty in distinguishing between an officer's lay and expert testimony:

> We have explained that [a] law enforcement officer's testimony is lay opinion if it is limited to what he observed . . . or to other facts derived exclusively from [a] particular investigation . . . . On the other hand, an officer testifies as an expert when he brings the wealth of his experience as [an] officer to bear on those observations and [makes] connections for the jury based on that specialized knowledge.

*Id.* at 969 (quoting *United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012) (additional quotations and citations omitted)). The panel also acknowledged that distinguishing between an officer's expert and lay testimony "is often far from clear" when that officer possesses specialized knowledge and was also personally involved in the facts underlying the case. *Id.* It explained that "'[t]he inferences officers draw when observing and responding to situations cannot always be separated from the expertise they bring to

evaluate those situations. Their observations are guided by experience and training and thus, at least some of their fact testimony will be influenced by specialized knowledge.'" *Id.* (quoting *Christian*, 673 F.3d at 708).

In light of *Huggins*, we agree with Appellant that the Superior Court erred in concluding that the instant testimony was admissible as lay opinion because it did not involve specialized knowledge within the realm of expert testimony. Here, Detective Holzwarth primarily functioned as a fact witness but was also called upon to offer general opinion testimony concerning whether or not it was common for child victims of sexual assault to have trouble remembering dates and details of ongoing sexual assaults. Detective Holtzwarth was asked to provide insights gained through specialized occupational training and experience not within the average layperson's knowledge base as required by the plain language of Rule 702(a). Detective Holzwarth called upon the wealth of his knowledge and training as a detective with extensive experience investigating sexual assaults and made connections for the jury based on that specialized knowledge. While some laypersons may be aware of common behaviors and responses to sexual abuse, it would be a generalization to assume that the average juror is privy to the complex psychological dynamics surrounding sexual abuse. Accordingly, we hold that testimony from a law enforcement officer concerning child victims' typical behaviors and responses to sexual abuse, when based on that officer's training and experience, falls within the realm of expert testimony. Moreover, as detailed above, Section 5920 specifically provides that such testimony is an appropriate topic for expert analysis.[3] We

---

[3] We recognize that this conclusion conflicts with *Dunkle* insofar as that case can be read as precluding entirely expert testimony concerning facts and opinions regarding specific types of victim responses and behaviors to sexual abuse. We consider the continued validity of *Dunkle* in this regard below, as well as the impact of Section 5920 on its holding.

further emphasize that whether expert testimony on this topic is admissible is subject to all other admissibility concerns, such as proper qualification as an expert.[4]

We must now consider the appropriate remedy given the improper admission of this testimony. This Court has held that an error may be considered harmless "only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story*, 383 A.2d 155, 162 (Pa. 1978). "[A]n error cannot be held harmless unless the appellate court determined that the error could not have contributed to the verdict. Whenever there is a reasonable probability that an error might have contributed to the conviction, the error is not harmless." *Id.* at 164. In *Story*, this Court outlined three scenarios under which an error may be deemed harmless, which have been summarized in subsequent cases as follows:

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Fulton*, 179 A.3d 475, 493 (Pa. 2018) (additional citations omitted).

This case implicates the first analytical approach, as it involves the impact of the detective's improperly admitted testimony. We disagree with the Commonwealth that admission of the instant testimony was harmless. This case involved competing narratives about whether or not various sexual assaults occurred, making credibility a central issue. Whether intentional or unintentional, the Commonwealth's emphasis on

---

[4] The Commonwealth's framing of its questions in terms of training and experience significantly impacts our decision in this case. By doing so, the Commonwealth signaled the imprimatur of the detective to provide generalized expert testimony regarding behavior patterns of child victims of sexual abuse. We note, however, that testimony from the detective based solely on factual observations, without extrapolation to victim behavior generally, would arguably be admissible as lay opinion testimony, as it does not signal any type of specialized knowledge.

Detective Holzwarth's training and experience prior to eliciting testimony concerning common victim behavior in response to sexual abuse likely signaled to the jury that he was qualified to offer such a response. As a result, the jury was able to draw an inference that the victim's behavior in this case was consistent with similarly situated victims, without any of the heightened reliability concerns that accompany expert testimony. We therefore cannot say with certainty that the jury did not place undue weight on the testimony, despite defense counsel's attempt to neutralize the effect of the testimony on cross-examination by eliciting a concession from the detective that an inability to recall dates and times of assaults could mean no assault occurred. Appellant is therefore entitled to a new trial.

### III. *Commonwealth v. Dunkle* and 42 Pa.C.S. § 5920

Before proceeding to the next issue, we find it necessary to recount our decision in *Dunkle*, as well as the statutory language of Section 5920.[5] In *Dunkle*, this Court addressed, inter alia, whether it was error to admit expert testimony explaining why sexually abused children may be unable to recall details of assaults, omit details of assaults, and delay reporting assaults. *Dunkle*, 602 A.2d at 831. We concluded that such testimony was "easily understood by lay people and did not require expert analysis." *Id.* at 836-838. We additionally found that testimony on this topic invaded the jury's sole province of determining witness credibility. *Id.* at 837-38 (citing *Commonwealth v. Seese*,

---

[5] The Commonwealth asserts that Appellant waived any claim concerning the validity of *Dunkle* in light of the legislature's passage of Section 5920 by failing to raise it in the courts below. Commonwealth's Brief at 24. We decline to find this issue waived, but rather subsumed by the scope of our grant of allocatur.

517 A.2d 920 (Pa. 1986) (holding inadmissible expert testimony concerning veracity of child victim in sexual abuse case) (additional citations omitted)).[6]

More than twenty years following our decision in *Dunkle*, the legislature enacted Section 5920, which provides as follows:

**§ 5920. Expert testimony in certain criminal proceedings**

(a) Scope. – This section applies to all of the following:

(1) A criminal proceeding for an offense for which registration is required under Subchapter H of Chapter 97 (relating to registration of sexual offenders).

(2) A criminal proceeding for an offense under 18 Pa.C.S. [Chapter] 31 (relating to sexual offenses).

(b) Qualifications and use of experts. –

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

---

[6] In *Dunkle*, we also considered whether the trial court erred by allowing expert testimony concerning behavior patterns of child sexual assault victims, referred to then as "child sexual abuse syndrome." *Dunkle*, 602 A.2d at 832. We concluded that based upon research available at the time, expert testimony on this topic should have been precluded as it was not "sufficiently established to have gained general acceptance in the particular field in which it belongs[,]" for purposes of the test set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). *Id.* at 834 (citation omitted). This aspect of our holding in *Dunkle* is not relevant to the instant appeal, as this case does not involve testimony concerning child sexual abuse syndrome.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S. § 5920.

## IV. Continued Validity of *Dunkle* in light of 42 Pa.C.S § 5920

### A. Parties' Arguments

We now turn to the parties' arguments concerning the continued validity of *Dunkle* in light of Section 5920. Appellant first notes that the doctrine of separation of powers prohibits the legislature from overruling this Court's judicial decisions through acts of assembly. Appellant's Brief at 27 (citing *Leahey v. Farrell*, 66 A.2d 577, 579 (Pa. 1949)). Turning to *Olivo,* Appellant recognizes that we narrowly held Section 5920 did not infringe on our constitutional authority to govern the procedure of the courts. *Id.* at 28-29 (citing *Olivo*, 127 A.3d at 769). He asserts that this decision, however, does not preclude us from concluding that certain other applications of Section 5920 are impermissible. Specifically, Appellant argues Section 5920 must be construed in a manner consistent with *Dunkle* and our longstanding precedent prohibiting expert testimony that invades the jury's province to determine witness credibility. *Id.* at 28-30 (citing *Commonwealth v. Alicia*, 92 A.3d 753, 760 (Pa. 2014); *Maconeghy*, 171 A.3d at 712).

With respect to whether the statute offends this prohibition, Appellant asserts that although Section 5920 expressly precludes expert witness opinions concerning the credibility of witnesses, including the victim, the statute nonetheless cannot be reconciled with decisions of this Court. *Id.* at 33. In Appellant's view, Section 5920 is particularly at odds with *Dunkle* and *Commonwealth v. Balodis*, 747 A.2d 341 (Pa. 2000), insofar as it permits a properly qualified expert to testify to facts and opinions concerning types of victim behaviors. *Id.* at 33. He explains that in *Dunkle*, we concluded that expert

testimony concerning typical behavior patterns displayed by child victims of sexual abuse invaded the jury's province of determining witness credibility. *Id.* at 33-36 (citing *Dunkle*, 602 A.2d at 837-38). He further notes that in *Balodis*, we found that counsel rendered ineffective assistance by failing to preserve a challenge to the trial court's admission of expert testimony which bolstered the credibility of victim in child sexual assault case. *Id.* at 36-37 (citing *Balodis*, 747 A.2d at 344-48).

Appellant again discusses our decision in *Olivo*, and interprets our holding as a "wholesale rejection" of the argument that Section 5920 contravenes our decision in *Dunkle,* and asks us to revisit that conclusion. *Id.* at 38. He argues that *Dunkle* plainly found expert testimony concerning why sexually abused children omit details of assaults, cannot recall details of assaults, or delay reporting of assaults invaded the jury's province as sole arbiter of credibility. *Id.* at 41 (*Dunkle*, 602 A.2d at 836-38). He asserts that this conclusion was distinct from our finding that expert testimony concerning the uniformity of behavior generally displayed by child victims of sexual assault did not meet the *Frye* standard for admitting expert testimony. *Id.* at 42. For this reason, Appellant argues that any advancements in science pertaining to this subject matter would be an illegitimate basis to reject our holding in *Dunkle*. *Id.* at 43. Appellant lastly observes that our precedent precluding expert testimony touching upon witness credibility is "inextricably linked" to due process rights, as well as the right to trial by an impartial jury. *Id.* He argues that because Section 5920 touches upon the constitutional rights of criminal defendants by permitting expert testimony in a manner that invades the jury's role of determining credibility, the legislature exceeded its authority by enacting the statute. *Id.* at 43-44.[7]

---

[7] The Defender Association of Philadelphia and the Pennsylvania Association of Criminal Defense Lawyers filed an amicus brief in support of Appellant. They do not offer any argument as to whether the testimony at issue constitutes expert or lay testimony, but instead focus on the second issue, largely echoing the arguments made by Appellant.

Notwithstanding its waiver argument, the Commonwealth agrees with Appellant that the legislature may not overrule our judicial decisions. Commonwealth's Brief at 28. It further maintains that our decisions in both *Olivo* and *Maconeghy* indicate that Section 5920 alters the interpretation of *Dunkle*. *Id.* at 28-31. The Commonwealth submits that the premise in *Dunkle* that certain victim responses and behaviors are capable of being understood by laypersons remains valid and urges us to view Section 5920 as "creating a means, under the appropriate circumstances, to permit expert testimony with regard to specific victim responses and behaviors[.]" *Id.* at 33.

The Commonwealth explains that by enacting Section 5920, the legislature acknowledged that expert testimony concerning certain types of victim responses and behaviors are indeed beyond the common knowledge of laypersons, aligning Pennsylvania with the prevailing view among all other states. *Id.* at 34-37. The Commonwealth then references this Court's decision in *Commonwealth v. Walker*, 92 A.3d 766 (Pa. 2014), which concerned the admission of expert testimony on the topic of eyewitness identification, to illustrate that scientific developments in a certain field may alter courts' evidentiary determinations. *Id.* at 38. Accordingly, the Commonwealth avers that *Dunkle* is outmoded in that it concludes all responses and behaviors are within the realm of knowledge possessed by laypersons. *Id.* at 39. In this regard, the Commonwealth disagrees with Appellant that scientific progress is an inappropriate basis to reject our holding in *Dunkle*. *Id.* at 38.

Finally, the Commonwealth further disagrees with Appellant that Section 5920 impermissibly intrudes on the jury's role of determining credibility. *Id.* It explains that our decision in *Olivo* acknowledged that the holding in *Dunkle* was partly based on then-available research, therefore its conclusion that testimony concerning victim responses and behaviors was "based, at least partially, on its assumption that the jury was already

well equipped to understand these matters." *Id.* at 40. It again references *Walker*, this time to support its assertion that testimony concerning victim behavior in response to sexual abuse does not infringe upon the jury's credibility determinations. *Id.* at 41. There, this Court concluded that expert testimony on psychological factors that may influence eyewitness identification did not speak to witness credibility, but "provide[d] jurors with education by which they assess themselves the witness's credibility." *Id.* (quoting *Walker*, 92 A.3d at 784). As for the scope and parameters of expert testimony concerning victim responses and behaviors, the Commonwealth points out that Section 5920 merely speaks to the relevancy of the expert's testimony, while the proponent of the testimony must still prove the testimony meets the admissibility standards set forth in *Frye. Id.* at 46-47 (citing *Commonwealth v. Cramer*, 195 A.3d 594 (Pa. Super 2018)).

## B. Analysis

Whether the legislature's enactment of Section 5920, which allows for expert testimony concerning victim behavior in response to sexual abuse in certain criminal proceedings involving sexual offenses, effectively overruled our decision in *Dunkle* poses a question of law, for which our standard of review is de novo and our scope of review is plenary. *Commonwealth v. Martinez*, 147 A.3d 517, 529 (Pa. 2016) (citing *Commonwealth v. Crawley*, 924 A.2d 612, 614 (Pa. 2007)).

The parties touch upon two aspects of our holding in *Dunkle.* The first being the conclusion that testimony concerning the reasons why child victims of sexual assault delay reporting sexual assaults, omit reporting details of sexual assaults, or are unable to recall details of sexual assaults was easily understood by laypersons and did not require expert analysis. With respect to this holding, Appellant agrees that Section 5920 is a proper exercise of legislative authority insofar as it deems admissible certain expert testimony involving facts and opinions regarding specific types of victim responses and

victim behaviors to sexual abuse. The Commonwealth similarly does not take issue with the legislature's authority to statutorily allow such testimony, but maintains the provision merely creates a means for admission of expert testimony on this topic when appropriate and does not necessarily preclude lay witnesses from also commenting on this topic.

We agree with Appellant that Section 5920 effectively overruled *Dunkle* in this regard. In *Olivo*, this Court found that Section 5920 did not violate our exclusive control over judicial procedures pursuant to Article V, Section 10(c) of the Pennsylvania Constitution. *Olivo*, 127 A.3d at 770. We concluded that the statute constituted a rule of evidence governable by statute, and also deemed it "substantive rather than procedural as it permits both parties to present experts to testify to facts and opinions regarding specific types of victim responses and victim behaviors." *Id.* at 780 (citing *Commonwealth v. Newman*, 633 A.3d 1069, 1071 (Pa. 1993) ("Subject only to constitutional limitations, the legislature is always free to change the rules governing competency of witnesses and admissibility of evidence.")). *Olivo* did not provide us with an opportunity to comment on the continued validity of *Dunkle* in light of the provision. However, based on *Olivo*, which found Section 5920 to be a proper exercise of legislative authority, as well as our above analysis recognizing that such testimony falls within the realm of expert testimony under our rules of evidence and *Huggins*, we now necessarily hold that Section 5920 effectively overruled *Dunkle* to the extent that case can be read as categorically prohibiting expert testimony concerning victim behavior in response to sexual abuse due to it being within the ken of laypeople and not requiring expert analysis. *See Olivo*, 127 A.3d at 781 (Saylor, C.J., concurring) (opining legislature's intent in enacting Section 5920 was to remove appearance of per se prohibition erected by some of the language used in *Dunkle*). We disagree with the Commonwealth's assertion that Section 5920 does not preclude lay opinion testimony on this topic, but merely created an avenue for expert

testimony when appropriate. To conclude that some lay testimony on this subject matter is permissible would undermine our conclusion that the behavior of child sexual assault victims is beyond that generally understood by the average layperson.

Both parties, to some degree, also touch on the other aspect of our holding in *Dunkle*, which found that expert testimony on this topic invades the jury's province of determining witness credibility. They seem to agree that any interpretation of Section 5920 must comport with this prohibition. Appellant, however, reads broadly our holding in *Dunkle*, asserting that all testimony in this regard violates this mandate. Such an interpretation would of course prohibit the Commonwealth entirely from introducing testimony like that provided by Detective Holzwarth in this case. To the contrary, the Commonwealth does not believe such testimony categorically violates this proscription. We are in substantial agreement with the Commonwealth on this point.

It is well-settled that expert testimony on the issue of a witness's credibility is impermissible, as it encroaches on the province of the jury to make such determinations. *See e.g., Maconeghy*, 171 A.3d at 712 (holding inadmissible expert testimony that a particular complainant was a victim of sexual abuse as it invaded the province of the jury relative to determining credibility); *Commonwealth v. Davis*, 541 A.2d 315 (Pa. 1988) (holding trial counsel ineffective for failing to object to expert testimony that children typically have had some sort of sexual experience in order to report abuse because such testimony assessed children's truthfulness); *Seese*, 517 A.2d at 921 (holding impermissible expert testimony that young children lack the sexual knowledge to supply details about sexual encounters and therefore usually do not fabricate stories of sexual abuse because such testimony encroached on jury's province to determine credibility); *Commonwealth v. O'Searo*, 352 A.2d 30, 32 (Pa. 1976) (holding that issue of witness credibility is within the knowledge of the average layperson and must be determined

solely by the factfinder). Notwithstanding, we decline to read *Dunkle* so broadly as to preclude all expert testimony concerning victim responses and behaviors to sexual assaults. While some testimony on this topic may be prohibited for impermissibly invading the jury's province of determining credibility, we disagree that all testimony will. Whether or not this prohibition has been violated must instead be assessed on a case by case basis.

We additionally note that Section 5920 complies with this notion on its face, as it explicitly provides that a properly qualified expert may testify to facts and opinions regarding specific types of victim responses and behaviors in certain criminal proceedings involving sexual assaults, provided experts do not offer opinions regarding the credibility of any witness, including the victim. *See* 42 Pa.C.S. § 5920(b)(3) ("The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible."). For these reasons, we hold that *Dunkle* remains valid insofar as it precludes expert testimony concerning victim responses and behaviors that touch upon witness credibility, but decline to find that the case categorically precludes expert testimony concerning victim behavior in response to sexual abuse. This said, whether Detective Holzwarth's testimony complies with the foregoing admissibility considerations is a question for the trial court upon remand.

## V. Conclusion

Accordingly, we reverse the judgment of the Superior Court and remand this matter for a new trial consistent with this opinion.

Chief Justice Saylor and Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.